IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| Matthew Branning, | |
| *On behalf of himself and those similarly situated,* | Case No. 1:19-cv-2092 |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| Romeo's Pizza, Inc.; Romeo's Pizza Franchise LLC; Spackler, Smails, and Noonan Pizza Company; Sean Brauser; Ryan Rose; Doe Corporation 1-25; John Doe 1-25; | Jury Demand Endorsed Hereon |
| Defendants. | |

CLASS AND COLLECTIVE ACTION COMPLAINT

1.     Matthew Branning, on behalf of himself and similarly-situated individuals, brings this action against Defendants Romeo's Pizza, Inc., Romeo's Pizza Franchise LLC, Spackler, Smails, and Noonan Pizza Company, Sean Brauser, Ryan Rose, Doe Corporation 1-25, and John Doe 1-25 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages and overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Ohio Constitution, Article II, Section 34a ("Section 34a"), O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), O.R.C. § 2307.60, and for unjust enrichment.

2.     Defendants operate approximately thirty-five (35) Romeo's Pizza restaurants. Thirty-two (32) of their stores are located in Ohio. (collectively referred to herein as the "Romeo's Pizza stores").

3.     Plaintiff seeks to represent the delivery drivers who have worked at the Romeo's Pizza stores.

4.     Defendants repeatedly and willfully violated the Fair Labor Standards Act, Section 34a, and the Ohio Prompt Pay Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked.

5.     Defendants also require delivery drivers to work in "dual jobs," one where they received tips, and another where they did not. Defendants improperly claimed a tip credit from the drivers' wages during all of these hours.

6.     All delivery drivers at the Romeo's Pizza stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

## Jurisdiction and Venue

7.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

8.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Ohio law claims.

9.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## Parties

**Plaintiff**

**Matthew Branning**

10.    Plaintiff Matthew Branning is a resident of Ohio and, at all times material herein, Plaintiff worked within the boundaries of Northern District of Ohio.

11.    Plaintiff was an "employee" of all of the Defendants as defined in the FLSA, Section 34a, and the Ohio Prompt Pay Act.

12.    Plaintiff has given written consent to join this action.

**Defendants**

13.    Defendants operate the Romeo's Pizza stores as joint employers.

14.    The determination of whether a person or entity is a "joint employer" is not made based on the labels or titles used by the putative employer. That Defendants claim to operate "franchises" is not relevant to whether they are employers under the FLSA and Ohio wage law.

15.    Defendants Romeo's Pizza, Inc. and Romeo's Pizza Franchise LLC make up the parent company that oversees operations at all Romeo's Pizza stores.

16.    Romeo's Pizza, Inc. and Romeo's Pizza Franchise LLC both exercise control over the work and working conditions of the delivery drivers at the Romeo's Pizza stores.

17.    Romeo's Pizza, Inc. and Romeo's Pizza Franchise LLC benefits from the work of the delivery drivers at the Romeo's Pizza stores.

18.    The franchise entities, including Spackler, Smails, and Noonan Pizza Company, act directly and indirectly in the interest of Romeo's Pizza, Inc. and Romeo's Pizza Franchise LLC in relation to the delivery drivers at the store(s) it operates.

19.     Romeo's Pizza, Inc. and Romeo's Pizza Franchise LLC share control over the delivery drivers at the Romeo's Pizza stores.

20.     Romeo's Pizza, Inc. and Romeo's Pizza Franchise LLC control the franchise entities that operate the Romeo's Pizza stores.

21.     Formally and/or as a matter of practice, Romeo's Pizza, Inc. and Romeo's Pizza Franchise LLC jointly determine, share, or allocate the power to direct, control, or supervise the delivery drivers, whether by direct or indirect means.

22.     Formally and/or as a matter of practice, Romeo's Pizza, Inc. and Romeo's Pizza Franchise LLC, together with their franchisees, jointly determine, share, or allocate the power to, directly or indirectly, hire or fire the worker or modify the terms or conditions of the worker's employment.

23.     Romeo's Pizza, Inc. and Romeo's Pizza Franchise LLC and its franchisees have permanent, long term relationships.

24.     Formally and/or as a matter of practice, Romeo's Pizza, Inc. and Romeo's Pizza Franchise LLC and its franchisees jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll, providing workers' compensation insurance, paying payroll taxes, or providing the facilities, equipment, tools, or materials necessary to complete the work.

25.     Sean Brauser founded Romeo's Pizza, Inc., and still owns all or part of it.

26.     Ryan Rose is the President and Chief Executive Officer of Romeo's Pizza Franchise LLC.

4

27.     Brauser has stated, "In a franchise operation, you really want to have uniformity. The system that you build has to be so perfect that all you want is for people to come in and run your system. We don't want people to come in and create their own flare or do their own thing. We just want that person to come in and drive it. The people who follow the system best—they follow the marketing plan, the operations plan and the finance aspect—those are the people who are most successful."

28.     Brauser has also stated, "We try to control franchisees through consultants and brand protectors to make sure they are following the systems and processes that we've created. It's almost like we police them into being successful."

29.     Various entities, including Defendant Spackler, Smails, and Noonan Pizza Company, have entered to franchise agreements with Romeo's Pizza, Inc. and Romeo's Pizza Franchise LLC to operate Romeo's Pizza stores.

30.     Romeo's Pizza, Inc., Romeo's Pizza Franchise LLC, and its various franchises are joint employers of the delivery drivers at the Romeo's Pizza stores.

**Romeo's Pizza, Inc.**

31.     Defendant Romeo's Pizza, Inc. is a domestic corporation authorized to do business under the laws of Ohio.

32.     Romeo's Pizza, Inc. is the "parent" corporation overseeing Romeo's Pizza Franchise LLC and the various franchise entities

33.     Romeo's Pizza, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

5

34.     Romeo's Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

35.     At all relevant times, Romeo's Pizza, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

36.     Romeo's Pizza, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA, the OMFWSA, Section 34a, and the Ohio Prompt Pay Act.

37.     At all relevant times, Romeo's Pizza, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

38.     Romeo's Pizza, Inc.'s gross revenue exceeds $500,000 per year.

**Romeo's Pizza Franchise LLC**

39.     Defendant Romeo's Pizza Franchise LLC is a domestic limited liability company authorized to do business under the laws of Ohio.

40.     Romeo's Pizza Franchise LLC is the entity that enters into franchise agreements with the various Romeo's franchisees.

41.     Ryan Rose is the president and CEO of Romeo's Pizza Franchise LLC.

42.     Romeo's Pizza Franchise LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

6

43.     Romeo's Pizza Franchise LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

44.     At all relevant times, Romeo's Pizza Franchise LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

45.     Romeo's Pizza Franchise LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA, the OMFWSA, Section 34a, and the Ohio Prompt Pay Act.

46.     At all relevant times, Romeo's Pizza Franchise LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

47.     Romeo's Pizza Franchise LLC's gross revenue exceeds $500,000 per year.

**Spackler, Smails, and Noonan Pizza Company**

48.     Defendant Spackler, Smails, and Noonan Pizza Company is a domestic corporation authorized to do business under the laws of Ohio.

49.     Spackler, Smails, and Noonan Pizza Company is the entity that appears on Plaintiff's paystubs for work he completes for Defendants.

50.     Spackler, Smails, and Noonan Pizza Company is a franchise operator of Romeo's Pizza stores.

51.     Spackler, Smails, and Noonan Pizza Company has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

52.     Spackler, Smails, and Noonan Pizza Company has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

53.     At all relevant times, Spackler, Smails, and Noonan Pizza Company maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

54.     Spackler, Smails, and Noonan Pizza Company is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA, the OMFWSA, Section 34a, and the Ohio Prompt Pay Act.

55.     At all relevant times, Spackler, Smails, and Noonan Pizza Company has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

56.     Spackler, Smails, and Noonan Pizza Company's gross revenue exceeds $500,000 per year.

**Sean Brauser**

57.     Defendant Sean Brauser is the founder and owner of Romeo's Pizza, Inc.

58.     Sean Brauser is individually liable to the delivery drivers at the Romeo's Pizza stores under the definitions of "employer" set forth in the FLSA, OMFWSA, and Section 34a because he owns and operates the Romeo's Pizza stores, serves as a manager and/or member of

8

Romeo's Pizza, Inc., ultimately controls significant aspects of the Romeo's Pizza stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

59.     Sean Brauser set in place all of the operational systems at the Romeo's Pizza stores and requires that his franchisees follow those systems.

60.     At all relevant times, by virtue of his role as founder, owner, and operator of Romeo's Pizza, Sean Brauser has had financial control over the operations at each of the Romeo's Pizza stores.

61.     At all relevant times, by virtue of his role as founder, owner, and operator of Romeo's Pizza, Sean Brauser has a role in significant aspects of the Romeo's Pizza stores' day to day operations.

62.     At all relevant times, by virtue of his role as founder, owner, and operator of Romeo's Pizza, Sean Brauser has had control over the Romeo's Pizza stores' pay policies.

63.     At all relevant times, by virtue of his role as founder, owner, and operator of Romeo's Pizza, Sean Brauser has had power over personnel and payroll decisions at the Romeo's Pizza stores, including but not limited to influence of delivery driver pay.

64.     At all relevant times, by virtue of his role as founder, owner, and operator of Romeo's Pizza, Sean Brauser has had the power to hire, fire and discipline employees, including delivery drivers at the Romeo's Pizza stores.

65.     At all relevant times, by virtue of his role as founder, owner, and operator of Romeo's Pizza, Sean Brauser has had the power to stop any illegal pay practices that harmed delivery drivers at the Romeo's Pizza stores.

66.    At all relevant times, by virtue of his role as founder, owner, and operator of Romeo's Pizza, Sean Brauser has had the power to transfer the assets and liabilities of Romeo's Pizza, Inc.

67.    At all relevant times, by virtue of his role as founder, owner, and operator of Romeo's Pizza, Sean Brauser has had the power to declare bankruptcy on behalf of Romeo's Pizza, Inc.

68.    At all relevant times, by virtue of his role as founder, owner, and operator of Romeo's Pizza, Sean Brauser has had the power to enter into contracts on behalf of each of the Romeo's Pizza stores.

69.    At all relevant times, by virtue of his role as founder, owner, and operator of Romeo's Pizza, Sean Brauser has had the power to close, shut down, and/or sell each of the Romeo's Pizza stores.

70.    At all relevant times, by virtue of his role as founder, owner, and operator of Romeo's Pizza, Sean Brauser had authority over the overall direction of each of Romeo's Pizza stores and was ultimately responsible for their operations.

71.    The Romeo's Pizza stores function for Sean Brauser's profit.

72.    Sean Brauser has influence over how the Romeo's Pizza stores can run more profitably and efficiently.

**Ryan Rose**

73.    Defendant Ryan Rose is the President and CEO of Romeo's Pizza.

74.    Ryan Rose is individually liable to the delivery drivers at the Romeo's Pizza stores under the definitions of "employer" set forth in the FLSA, OMFWSA, and Section 34a because

he owns and operates the Romeo's Pizza stores, serves as a manager and/or member of Romeo's Pizza, Inc., ultimately controls significant aspects of the Romeo's Pizza stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

75.     Ryan Rose runs the day-to-day operations of Romeo's Pizza.

76.     At all relevant times, by virtue of his role as President and CEO of Romeo's Pizza, Ryan Rose has had financial control over the operations at each of the Romeo's Pizza stores.

77.     At all relevant times, by virtue of his role as President and CEO of Romeo's Pizza, Ryan Rose has a role in significant aspects of the Romeo's Pizza stores' day to day operations.

78.     At all relevant times, by virtue of his role as President and CEO of Romeo's Pizza, Ryan Rose has had control over the Romeo's Pizza stores' pay policies.

79.     At all relevant times, by virtue of his role as President and CEO of Romeo's Pizza, Ryan Rose has had power over personnel and payroll decisions at the Romeo's Pizza stores, including but not limited to influence of delivery driver pay.

80.     At all relevant times, by virtue of his role as President and CEO of Romeo's Pizza, Ryan Rose has had the power to hire, fire and discipline employees, including delivery drivers at the Romeo's Pizza stores.

81.     At all relevant times, by virtue of his role as President and CEO of Romeo's Pizza, Ryan Rose has had the power to stop any illegal pay practices that harmed delivery drivers at the Romeo's Pizza stores.

82.     At all relevant times, by virtue of his role as President and CEO of Romeo's Pizza, Ryan Rose has had the power to transfer the assets and liabilities of Romeo's Pizza, Inc.

83.    At all relevant times, by virtue of his role as President and CEO of Romeo's Pizza, Ryan Rose has had the power to declare bankruptcy on behalf of Romeo's Pizza, Inc.

84.    At all relevant times, by virtue of his role as President and CEO of Romeo's Pizza, Ryan Rose has had the power to enter into contracts on behalf of each of the Romeo's Pizza stores.

85.    At all relevant times, by virtue of his role as President and CEO of Romeo's Pizza, Ryan Rose has had the power to close, shut down, and/or sell each of the Romeo's Pizza stores.

86.    At all relevant times, by virtue of his role as President and CEO of Romeo's Pizza, Ryan Rose had authority over the overall direction of each of Romeo's Pizza stores and was ultimately responsible for their operations.

87.    The Romeo's Pizza stores function for Ryan Rose's profit.

88.    Ryan Rose has influence over how the Romeo's Pizza stores can run more profitably and efficiently.

**Doe Corporation 1-25**

89.    Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also qualify as "employers" of Plaintiff and the delivery drivers at the Romeo's Pizza stores as that term is defined by the FLSA and Ohio wage law.

90.    Specifically, the Romeo's Pizza franchise locations are operated by separate legal entities, but are all controlled by Defendants' systems, policies, and practices.

91.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-25**

92.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Romeo's Pizza stores as that term is defined by the FLSA and Ohio wage law.

93.     Specifically, the owners and operators of the various Romeo's Pizza franchise locations are also "employers" of the delivery drivers employed at their locations.

94.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## FACTS

### Class-wide Factual Allegations

95.     During all relevant times, Defendants have operated the Romeo's Pizza stores.

96.     Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers at the Romeo's Pizza stores.

97.     All delivery drivers employed at the Romeo's Pizza stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

98.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Romeo's Pizza stores building pizza boxes, cleaning, preparing pizza and other food items, washing dishes, cutting vegetables, and completing other duties inside the restaurant as necessary.

99.     At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage minus a tip credit for the hours they worked while completing deliveries.

100.    The job duties performed by delivery drivers inside the store are not related to their tip-producing duties while they are out on the road making deliveries.

13

101.    Delivery drivers do not complete their inside job duties contemporaneously with their delivery job duties.

102.    The delivery drivers at the Romeo's Pizza stores work "dual jobs."

103.    Defendants require delivery drivers at Romeo's Pizza stores to use their own cars to complete deliveries.

104.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

105.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

106.    Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

107.    The Romeo's Pizza stores reimburse their delivery drivers based on a per-delivery reimbursement policy that does not change depending on, for example, the number of miles driven by drivers to complete a delivery or the actual expenses incurred by the drivers.

108.    The Romeo's Pizza stores do not track the delivery drivers' actual expenses.

14

109.     The Romeo's Pizza stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

110.     The Romeo's Pizza stores do not reimburse their delivery drivers based on their actual expenses.

111.     The Romeo's Pizza stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

112.     The Romeo's Pizza stores do not reimburse their delivery drivers based on a reasonable approximation of their expenses.

113.     Plaintiff and similarly situated delivery drivers typically averaged over 5 miles per round-trip delivery or more.

114.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

        a.      2016: 54 cents/mile
        b.      2017: 53.5 cents/mile
        c.      2018: 54.5 cents/mile
        d.      2019: 58 cents/mile

115.     The delivery drivers at the Romeo's Pizza stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

116.     As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Ohio law.

117.     Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Romeo's Pizza stores.

15

118.    Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

119.    Defendants have failed to properly take a tip credit from Plaintiffs' wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

120.    Defendants have also failed to properly inform Plaintiff and similarly situated delivery drivers of the requirements for taking a tip credit.

121.    Prior to taking a tip credit from their wages, Defendants did not inform Plaintiffs and similarly situated delivery drivers of the amount of cash wage that would be paid to the delivery drivers.

122.    Prior to taking a tip credit from their wages, Defendants did not inform Plaintiffs and similarly situated delivery drivers of the additional amount by which the wages of the delivery driver are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee.

123.    Prior to taking a tip credit from their wages, Defendants did not inform Plaintiffs and similarly situated delivery drivers that all tips received by the delivery driver must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips.

16

124.    Prior to taking a tip credit from their wages, Defendants did not inform Plaintiffs and similarly situated delivery drivers that the tip credit shall not apply to any employee who has not been informed of these requirements of 29 C.F.R.§ 531.59.

125.    Defendants have willfully failed to pay federal and Ohio state minimum wage to Plaintiff and similarly situated delivery drivers at the Romeo's Pizza stores.

### Plaintiff's Individual Factual Allegations

126.    Plaintiff has worked at the Romeo's Pizza store in Lodi, Ohio since February 2019.

127.    Plaintiff is paid minimum wage minus a tip credit as an hourly rate for all hours worked.

128.    When Plaintiff is not delivering food, he works inside the restaurant. His work inside the restaurant includes taking orders over the phone and in person, checking out carryout customers, cutting pizza, folding pizza boxes, preparing food in the kitchen, washing dishes, cutting vegetables, cleaning up around the store, and taking care of other general tasks for the operation of the restaurant. Plaintiff also has non-tipped opening and closing duties for which he is paid minimum wage minus a tip credit.

129.    Plaintiff works dual jobs.

130.    Plaintiffs inside duties are not related to his delivery duties.

131.    Plaintiff is required to use his own car to deliver pizzas.

132.    Plaintiff is reimbursed $1.50 per delivery.

133.    Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

134.     Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

135.     Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incur cell phone and data charges all for the primary benefit of Defendants.

136.     Defendants does not track the actual expenses incurred by Plaintiff.

137.     Defendants does not reimburse Plaintiff based on his actual delivery-related expenses.

138.     Plaintiff is not reimbursed at the IRS standard mileage rate for the miles she drives while completing deliveries.

139.     Defendants do not reimburse Plaintiff based on a reasonable approximation of his expenses.

140.     Plaintiff regularly makes approximately 2 deliveries per hour during the hours he works as a delivery driver.

141.     Plaintiff regularly drove more than 5 miles per delivery. He estimates he averages approximately 8.5 miles, round trip, per delivery.

142.     In 2019, for example, the IRS business mileage reimbursement has been $.58 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. At the IRS standard business

mileage rate, Defendants' policy under-reimbursed Plaintiff by approximately $.40 per mile ($.58-$.18). Considering Plaintiff's estimate of about 8.5 average miles per delivery, Defendants under-reimbursed her about $3.40 per delivery ($.40 x 8.5 average miles), and $6.80 per hour (2 deliveries per hour x $3.40 per delivery).

143.    Defendants failed to properly inform Plaintiff of the requirements for taking a tip credit from his wages.

144.    Prior to taking a tip credit from his wages, Defendants did not inform Plaintiff of the amount of cash wage that would be paid to him.

145.    Prior to taking a tip credit from his wages, Defendants did not inform Plaintiff of the additional amount by which Plaintiff's wages are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee.

146.    Prior to taking a tip credit from his wages, Defendants did not inform Plaintiff that all tips received by him must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips.

147.    Prior to taking a tip credit from his wages, Defendants did not inform Plaintiff that the tip credit shall not apply to any employee who has not been informed of these requirements of 29 C.F.R.§ 531.59.

148.    Defendants have also failed to properly take a tip credit from Plaintiffs' wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Plaintiff they would be taking.

149.    Defendants have failed to pay Plaintiff minimum wage as required by law.

19

## Collective Action Allegations

150.    Plaintiff brings the First Count on behalf of himself and all similarly situated current and former delivery drivers employed at the Romeo's Pizza stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

151.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

152.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

153.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

154.    Defendants are aware or should have been aware that federal law requires them to meet certain requirements for taking a tip credit from the wages of their employees.

155.    Defendants are aware or should have been aware that federal law prohibits them from paying employees a tipped wage rate when they are working in a non-tipped capacity.

156.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

157.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

158.    The FLSA Collective members are readily identifiable and ascertainable.

159.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

### Class Action Allegations

160.    Plaintiff brings the Second, Third, Fourth, and Fifth Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Romeo's Pizza stores in the State of Ohio between the date three years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Class").

161.    Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

162.    The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

163.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

164.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

165.    Notice can be provided by means permissible under Rule 23.

166.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

167.    There are more than 50 Rule 23 Class members.

168.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

169.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Section 34a, and O.R.C. § 4113.15.

170.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

171.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

172.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

173.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

174. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

175. Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

a. Whether Plaintiff and the Rule 23 Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage and overtime;

b. Whether Plaintiff and the Rule 23 Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

c. Whether Plaintiff and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

d. Whether Defendants reimbursed Plaintiff and the Rule 23 Class members for their actual expenses;

e. Whether Defendants reimbursed Plaintiff and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

f. Whether Defendants reimbursed Plaintiff and the Rule 23 Class members based on a reasonable approximation of the expenses they incurred;

g. Whether Plaintiff and the Rule 23 Class completed non-tipped job duties for which they were paid a tipped wage rate;

h. Whether Plaintiff and the Rule 23 Class were properly informed of the requirements for taking a tip credit;

i. Whether Plaintiff and the Rule 23 Class were actually paid the wage rate they were promised by Defendants;

23

  j. Whether Plaintiff and the Rule 23 Class conferred a benefit on Defendants that Defendants were aware of and accepted, and whether it would be unjust for Defendants to retain that benefit without compensating for it;

  k. Whether Defendants failed to pay Plaintiff and the Rule 23 Class in a timely manner as described by O.R.C. § 4113.15, and, if so, whether the wages owed are "in dispute"; and

  l. The nature and extent of class-wide injury and the measure of damages for those injuries.

176. In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

177. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

178. Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

179. Defendants failed to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because Plaintiff and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

180. Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

181.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

182.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

183.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

184.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages - Ohio Constitution, Article II, § 34a**
**(On Behalf of Plaintiff and the Rule 23 Class)**

185.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

186.    Defendants paid Plaintiff and the Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

187.    Defendants ostensibly paid Plaintiff and the Rule 23 Class at or close to minimum wage for the hours they worked.

188.    Because Defendants required Plaintiff and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiff and the Rule 23 Class minimum wage.

25

189.    By not paying Plaintiff and the Rule 23 Class at least minimum wage for each hour worked, Defendants has violated the Ohio Constitution, Article II, § 34a.

190.    As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional two times unpaid wages/unreimbursed expenses in damages under Section 34a, costs, and attorneys' fees.

**Count 3**
**Untimely Payment of Wages – O.R.C. § 4113.15**
**(On Behalf of Plaintiff and the Rule 23 Class)**

191.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

192.    During all relevant times, Defendants were covered by O.R.C. § 4113.15, and Plaintiff and the Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

193.    O.R.C. § 4113.15(A) requires that Defendants pay Plaintiff and the Rule 23 Class all wages on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

194.    By failing to pay Plaintiff and the Rule 23 Class all wages due to them under the FLSA and Ohio Constitution, Defendants have also violated the Ohio Prompt Pay Act.

195.    Plaintiff and the Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

196.     In violating Ohio law, Defendants acted willfully, without a good faith basis and with reckless disregard to Ohio law.

197.     As a result of Defendants' willful violation, Plaintiff and the Rule 23 Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

**Count 4**
**Damages Pursuant to O.R.C. § 2307.60**
**(On Behalf of Plaintiff and the Rule 23 Class)**

198.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

199.     The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

200.     By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Plaintiff and the Rule 23 Class have been injured as a result.

201.     O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

202.     As a result of Defendants' willful violations of the FLSA, Plaintiff and the Rule 23 Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**Count 5**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Rule 23 Class)**

203.     The delivery drivers at the Romeo's Pizza stores have conferred a benefit on Defendants by using their own cars to work for Defendants.

204.     Defendants are aware of and have accepted the benefit conferred on them by delivery drivers.

205. It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the delivery drivers without commensurate compensation.

206. Plaintiffs and the delivery drivers are entitled to equitable restitution of all unreimbursed expenses.

**WHEREFORE**, Plaintiff Matthew Branning prays for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B. Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D. Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel.

E. A declaratory judgment that the practices complained of herein are unlawful under Section 34a and O.R.C. § 4113.15.

F. An award of unpaid minimum wages and unreimbursed expenses due under Section 34a.

G. An award of damages under Section 34a, based on Defendants' failure to pay wages, calculated as an additional two times of back wages.

H. An award of restitution for unjust enrichment.

28

I.      Liquidated damages under O.R.C. § 4113.15.

J.      Compensatory and punitive damages under O.R.C. § 2307.60.

K.      An award of prejudgment and post-judgment interest.

L.      An award of costs and expenses of this action, together with reasonable attorneys'

fees and expert fees.

M.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ Andrew Kimble
Andrew R. Biller (Ohio Bar # 0081452)
Biller & Kimble, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (Ohio Bar # 0093172)
Louise M. Roselle (Ohio Bar # 14844)
Biller & Kimble, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*lroselle@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Andrew Kimble
Andrew Kimble