In the United States District Court
for the Northern District of Ohio
Eastern Division at Cleveland

| | |
|---|---|
| Matthew Branning, *et al.*, <br><br> *On behalf of themselves and those similarly situated*, <br><br> Plaintiffs, <br> v. <br><br> Romeo's Pizza, Inc., *et al.*, <br><br> Defendants. | Case No. 1:19-cv-2092 <br><br><br><br> Judge Solomon Oliver Jr. |

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

Plaintiff Matthew Branning asks the Court to preliminarily approve the settlement between himself, the FLSA collective, and the Rule 23 class (collectively, "Plaintiffs"), and the following Defendants: Spackler, Smails, and Noonan Pizza Company; The Summer of George Pizza Company, LLC; I Don't Always Eat Pizza Company, LLC; Robert Braun; Thomas Fiala; John O'Keefe; David Leissinger; the Estate of Michael Hudson; and Robert Gilgora (collectively, "Spackler Defendants" or "Defendants").

The proposed Settlement Agreement, attached as Exhibit 1, resolves the collective and class-wide claims against the Spackler Defendants raised in this lawsuit. Defendants do not oppose this motion.

As explained further in the attached Memorandum of Law, Plaintiffs request that the Court: (1) preliminarily approve the proposed settlement; (2) approve the form, content, and

i

distribution of the class notice and claim form; (3) preliminarily approve the service award for Plaintiff Branning; (4) provisionally approve Class Counsel's request for attorneys' fees and costs; and (5) schedule a formal fairness hearing approximately 150 days after preliminary approval.

    Respectfully submitted,

/s/Laura E. Farmwald
Andrew R. Biller (Ohio Bar # 0081452)
Andrew P. Kimble (Ohio Bar # 0093172)
Laura E. Farmwald (Ohio Bar # 0095304)
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*lfarmwald@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiffs and putative class*

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY SETTLEMENT APPROVAL

1. **Introduction**

Plaintiffs[1] and the Spackler Defendants have reached a settlement that would resolve all the claims raised this lawsuit as set forth in the Settlement Agreement. Plaintiffs now ask the Court for preliminary approval of the parties' Settlement Agreement (attached as Exhibit 1)[2].

2. **Background and Procedural History**

This lawsuit centers around Plaintiffs' allegations that the Defendants inadequately reimbursed their delivery drivers for the drivers' delivery and driving-related expenses. (Second Amended Complaint, Doc. 66). Specifically, Plaintiffs allege that that Defendants required delivery drivers to provide their own vehicles to deliver the Defendants' pizza and other food, and the failure to adequately reimburse the drivers caused their wages to fall below the federal minimum wage. (*Id.*).

In addition to the under-reimbursement claim, Plaintiffs also allege that the Defendants failed to pay minimum wage because they failed to properly claim a tip credit from the delivery drivers' wage. (Doc. 66). Specifically, Plaintiffs contend that, after accounting for unreimbursed vehicle expenses, the Defendants did not actually pay the tipped wage rate they promised to pay, and therefore forfeited their right to claim a tip credit offset. (*Id.*). Plaintiffs also allege that

---

[1] Plaintiff Bradley Dietrich asserts the same claims stemming from Defendants' alleged mileage expense under-reimbursement policies against Defendants Romeo's Parma, LLC, BDS Brunswick, LLC, and BDS Brook Park, LLC, but will pursue Rule 23 certification via a separate motion.
[2] The attached Settlement Agreement has been agreed upon but is unsigned. The unsigned agreement is attached in order to comply with June 6, 2022 deadline to file the instant Motion and Agreement. A signed copy of the Settlement Agreement will be supplemented shortly.

1

Defendants' reimbursement policies and practices not only violated federal and state minimum wage laws, but also violated the Ohio Prompt Pay Act, O.R.C. § 4113.15, violated Ohio's Criminal Act's statute, O.R.C. § 2307.60, and resulted in the Spackler Defendants being unjustly enriched by the delivery drivers. The crux of the Parties' dispute is whether the reimbursement provided by the Defendants adequately reimbursed Plaintiffs for their vehicle expenses.

Defendants dispute liability. Moreover, Defendants dispute Plaintiff's calculation of and measure of damages, should liability be established.

Since the inception of this lawsuit, the parties have been litigating the issues involved by participating in discovery and through the briefing and filing of Motions to Dismiss, Motions to Bifurcate, and Motions to Compel (*See* Docs. 11, 21, 22, 33-37, 48, 53, 56, 58, 60, 61, 63, 73, 77, 80, 82, 83, 85, 87, 90, 103).

On May 11, 2021, Plaintiffs filed a Combined Motion for Rule 23 Class Certification and FLSA Conditional Certification. (Doc. 74). The Motion sought an Order certifying this action as a class action and designating Plaintiff Branning as the representative of the following class:

> All current and former delivery drivers employed by Defendants Spackler, Smails, and Noonan Pizza Company; The Summer of George Pizza Company, LLC; DMTB Pizza Company; I Don't Always Eat Pizza Company, LLC; Rob Braun; Thomas Fiala; John O'Keefe; David Leissinger; the Estate of Michael Hudson, and Robert Gligora in the State of Ohio between the date three years prior to the filing of the original complaint and the date of final judgment in this matter ("Spackler Rule 23 Class").

(*Id.*). Plaintiffs' Motion for Certification was granted on March 29, 2022. (Order, Doc. 104).

Shortly thereafter, Plaintiffs and the Spackler Defendants reached a negotiated settlement. (*See* Exhibit 1; Joint Notice of Settlement, Doc. 105).

2

3. **Summary of Settlement Terms**

The settlement agreement creates a settlement fund of $250,000.00, inclusive of attorneys' fees, expenses, claims administration fees, and service awards. (*See* Exhibit 1). Under the terms of the Agreement, unless they decide to opt out, each class member who worked for the Spackler Defendants at any time between September 11, 2016, and December 31, 2019, will receive a share of the settlement fund. For purposes of the settlement agreement, "Class Member" means:

> All non-exempt hourly delivery drivers who worked at the Spackler Defendants' Romeo's stores during the period from September 11, 2016, to December 31, 2019, who do not exclude themselves from the Lawsuit.

(See, Exhibit 1).

After subtracting fees, expenses, service awards, and claims administration costs, the remainder of the settlement fund will be distributed based on hours worked as a delivery driver by each Class Member during the period from September 11, 2016, to December 31, 2019 ("Class Period"), divided by the total hours worked as a delivery driver by all Class Members during the Class Period.

Upon preliminary approval, a Notice of Settlement (attached as Exhibit 2) will be distributed to the class members providing them with an opportunity to object or opt out before the Court considers whether to grant final approval. The Notice Period is 60 days.

As part of the settlement, Defendants agree not to oppose Plaintiffs' counsel's request for a fee award that is equal to or less than 1/3 of the Settlement Amount (*i.e.*, equal to or less than $83,333.33), advanced expenses of approximately $10,339.57, and a $5,000 service award for Plaintiff Matthew Branning. Funds allocated for settlement administration will be deducted from the settlement fund.

### 4. Standard for Settlement Approval

Where a class action settlement is achieved through experienced counsels' arm's-length negotiations, and absent fraud or collusion, courts should be hesitant to substitute their judgment for that of the parties who negotiated the settlement. *Granada Invs., Inc v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *See also*, IUE-*CWA v. Gen. Motor Corp.*, 283 F.R.D. 583, 594 (E.D. Mich. 2006) (noting that "the court must respect the parties compromise and may not substitute his or her judgment for that of the litigants and their counsel.") (Internal citations omitted); *Stinson v. Delta Mgmt. Assocs., Inc.*, 302 F.R.D. 160, 164 (S.D. Ohio 2014) (approving a class action settlement that "was the result of arm's-length negotiations conducted by experienced counsel for both parties."); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (noting there is a "strong judicial policy in favor of settlements, particularly in the class action context") (Internal citations omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged").

Courts typically use a three-step process for approving class-wide settlements: (1) the Court determines whether to preliminarily approve the settlement; (2) notice of the settlement is sent to interested persons; and (3) the Court decides whether to finalize approval of the settlement after holding a fairness hearing. *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2022 U.S. Dist. LEXIS 26005, at *3 (S.D. Ohio Feb. 9, 2022) (citing *Merkner v. AK Steel Corp.*, No. 1:09-cv-423, 2011 U.S. Dist. LEXIS 157375, at *1 (S.D. Ohio Jan. 10, 2011)). Preliminary approval is based on "whether the settlement falls within the range of reasonableness." *Waters,* 2022 U.S. Dist. LEXIS

26005, at *3. If the Court finds the proposed settlement to be reasonable, the Court then authorizes sending notice to the settlement class to confirm the Court's determination. *Id.*; Fed.R.Civ.P. 23.

In evaluating an FLSA settlement, like a class action settlement, the Court is tasked with ensuring that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arm's-length negotiation. *Call v. CTA Pizza, Inc.*, No. 2:18-cv-00696, 2019 U.S. Dist. LEXIS 181325, *6-7 (S.D. Ohio Oct. 21, 2019). As described below, the proposed settlement meets this standard.

Courts in the Sixth Circuit consider six factors when deciding whether to approve a settlement. Those factors include (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and amount of discovery completed; (3) the judgment of experienced trial counsel; (4) the nature of the negotiations; (5) any objections from class members; and (6) the public interest. *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 894–85 (6th Cir. 2019) (citing *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007)).

### 5. The Settlement Provides a Fair Resolution of Disputed Claims

The requirement that the Settlement Agreement resolves a bona fide dispute between the parties "stems from the need to ensure the parties are not negotiating around the FLSA's requirements concerning wages and overtime." *Call v. CTA Pizza, Inc.*, No. 2:18-cv-00696, at *7 (S.D. Ohio Oct. 21, 2019). Bona fide disputes have been found to exist in similar pizza delivery driver cases where the parties had a dispute as to which reimbursement rate would be used to determine proper compensation for the delivery drivers. *Id.*

In determining whether a settlement was negotiated at arms-length, courts look at "the risk associated with the expense and complexity of litigation" and whether the settlement was a result

5

of collusion among the parties. *Granada*, 962 F.2d at 1205. Furthermore, "[t]he participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Bert v. AK Steel Corp.*, Case No. 1:02-CV-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) (Internal citations omitted).

The proposed settlement in this case was reached only after lengthy and contentious litigation. This lawsuit has been active for over two years with numerous filings and opposed motions, and the Parties participated in a mediation with an independent mediator. There certainly has been no collusion among the Parties.

At the time of the negotiated settlement, there were multiple bona fide disputes between the Parties. First, the Parties disagreed on the proper method of calculating the reimbursement rate the delivery drivers were entitled to. Plaintiffs argued that the proper standard for reimbursement should be calculated using the IRS business mileage rate. Alternatively, Defendants argued that they were permitted to "reasonably approximate" the delivery drivers' expenses, and that the drivers were properly reimbursed. If the Spackler Defendants were successful in their argument that the "reasonable approximation standard" they could argue that their reimbursement to drivers was proper so that there was no violation. Plaintiffs would argue in the alternative—that the Spackler Defendants' reimbursement policies did not result in a "reasonably approximation" of the drivers' expenses, and that the class suffered damages. Additionally, use of the reasonable approximation standard would also likely require experts to opine on what a "reasonably approximate" amount could be, resulting in a range of potential damages (with $0 being a possible outcome).

The Parties also disputed whether the Spackler Defendants had adequately claimed a tip credit from the delivery drivers' wages and which of the Spackler Defendants qualified as an "employer" under the FLSA and Ohio law.

Whether through fighting the merits of this lawsuit or due to a potential lack of collectability, Plaintiffs risk a worse result if litigation continued. This risk weighs in favor of settling the case at this time and supports the settlement reached here. As it stands, the Settlement Agreement provides substantial relief to the aggrieved workers.

### 6. Additional Fairness Considerations

#### 6.1. Complexity, Expense, and Likely Duration

Wage and hour class and collective actions are inherently complex. *See, e.g., Arledge v. Domino's Pizza, Inc.*, 2018 U.S. Dist. LEXIS 179474, at *5 (S.D. Ohio Oct. 17, 2018). Pizza delivery driver cases are especially complex and time consuming because of the disputed legal standard that turns on regulations, *Auer/Kisor* deference issues, Department of Labor guidance and case law, and the potential for expert testimony. This case is no different, so this factor weighs in favor of approving the settlement.

#### 6.2. Stage of the Proceedings and Discovery

The Parties have been litigating this case for over two years and have filed numerous discovery and non-dispositive motions. The Parties have also prepared for and participated in a mediation by an uninterested third party. Additionally, the Parties fully briefed the issue of Conditional Certification of the FLSA collective and Rule 23 Class Certification. At this stage, the Parties can value the case and properly evaluate settlement.

### 6.3. Trial Counsel's Judgment

Plaintiffs' counsel supports the settlement and believes that it is a fair, adequate, and reasonable resolution.

### 6.4. Negotiations

As addressed above, the Parties negotiated this case through formal mediation and additional informal settlement discussions. This process, along with the hotly contested docket entries, demonstrates that the settlement was reached through arm's-length negotiations. This factor weighs in favor of approval.

### 6.5. Class Member Objections

The class members have not yet received notice, so this factor will need to be evaluated at final approval.

### 6.6. The Public Interest

The public has an interest in resolving complex class actions, which require significant Court resources that could be allocated to other matters. Further, because "[t]he settlement agreement itself is… public rather than confidential" this "supports the interests of other employees, the Congress, and the public, in seeing that FLSA disputes are resolved in a fair and reasonable way that is consistent with the requirements of the statute." *West v. Emeritus Corp.*, No. 3:15-CV-437, 2017 U.S. Dist. LEXIS 104269, at *6 (M.D. Tenn. July 5, 2017). The public has an interest in ensuring that minimum wage workers receive a just and speedy resolution to claims for unpaid wages. *Waters v. Pizza to You, LLC*, Case No. 3:19-cv-342, at *9.

### 7. The Proposed Attorneys' Fee Award is Reasonable

Class Counsel applies for an award of one-third of the settlement fund as attorneys' fees ($83,333.33). Defendants have agreed not to object to this award, which is a standard amount in this type of case. *See, e.g., Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *5 (S.D. Ohio Nov. 25, 2019) (An award of one-third "is a normal fee amount in a wage and hour case."); *see also Dewald v. Time Warner Cable Inc.*, 2021 U.S. Dist. LEXIS 32459, at *14 (S.D. Ohio Feb. 16, 2021) ("When using the percentage-of-the-fund method, courts in this Circuit generally approve of awards that are 1/3 of the total settlement."). "Absent compelling reasons to the contrary, this Court prefers the percentage-of-the-fund method, as it best reflects the FLSA's employee-protection objective." *Dewald*, 2021 WL 687246, 2021 U.S. Dist. LEXIS 32459, at *16.

Because the Settlement Agreement is not conditioned on an award of attorneys' fees, the Court need not make a final decision as to fees and costs now. (*See* Exhibit 1). Instead, Plaintiffs ask that the Court provisionally approve the fee award, subject to any objections from Class Members prior to final approval. Provisionally approving the fee award at this stage serves a useful function because the Class Members can be accurately informed in the notice as to what to expect with respect to attorneys' fees and costs.

Regardless, Class Counsel will expend additional time on this case during the notice and approval process, which would affect the Court's final evaluation of the final fee award, to the extent that the Court conducts a lodestar crosscheck. Likewise, Class Counsel will incur additional expenses between now and final approval, including, for example, costs of sending notice to the

Class Members. At the final fairness hearing, the Court will have a full record to be able to evaluate Class Counsel's request for fees and a reimbursement of expenses.

### 8. The Incentive Payment is Reasonable

Named Plaintiff Matthew Branning requests a $5,000 incentive service award. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).

Incentive awards account for the fact that "[b]ut for an individual worker coming forward to advocate for his fellow workers, many, if not most, wage and hour issues would go unaddressed. A worker who advocates for his or her colleagues assumes substantial risk, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer. Given that employers can find such information through a simple internet search, this risk is very real." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516 at *21. The same considerations apply in this case. Further, the proposed amount is even less than is typical in these types of cases. *See, e.g., Chrismon v. Meadow Greens Pizza*, 2020 WL 3790866, 2020 U.S. Dist. LEXIS 119873, at *14 (E.D.N.C. July 7, 2020) (collecting cases approving a $10,000 service award in pizza delivery driver cases).

### 9. The Court Previously Certified this Action as a Rule 23 Class Action

On March 29, 2022, the Court found that Plaintiffs and their claims satisfied the Rule 23(a) and Rule 23(b)(3) standards for class certification and accordingly certified this action as a class action with regard to counts 2, 3, 4, and 5 of the Complaint. (*See Order* Granting Class Certification, *Doc.* 104; Complaint, Doc. 1; Second Amended Complaint, Doc. 66).

10

### 10. The Court Previously Certified the FLSA Collective

In FLSA collective actions, "class certification typically occurs in two stages: conditional and final certification." *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012). At the conditional stage, "Plaintiffs must only make a modest showing that they are similarly situated to the proposed class of employees." *Lewis v. Huntington Nat. Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011) (citation omitted). At the final certification stage, "the Court applies 'a stricter standard than the conditional certification stage….'" *Hurt v. Commerce Energy, Inc.*, No. 1:12-CV-758, 2014 U.S. Dist. LEXIS 102549, at *13 (N.D. Ohio July 28, 2014) (citing *Frye*, 495 F. App'x at 671). The Sixth Circuit has explained that "it is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Id.* (citing *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584–85 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016)). For the same reasons that the Court previously granted class certification, it is appropriate to grant final certification of the FLSA collective. Further, Defendants do not oppose granting final certification of the FLSA collective for the purpose of settlement. (*See* Exhibit 1).

### 11. The Proposed Notice Conforms with Federal Law

The proposed class notice meets the standards set forth in Rule 23(c)(2)(B). The notice clearly and accurately describes the nature of the action, the definition of the class certified, and the class claims and defenses. *See* Exhibit 2, Notice of Settlement. The notice also informs class members that they may enter an appearance through counsel if the member so desires and explains

the binding effect of the release. The notice provides putative class members with an opportunity to file objections to the settlement as required by Rule 23(e)(4)(A).

The Court should direct distribution of the class notice in the manner described in the Settlement Agreement. The Settlement Agreement envisions sending the Notice within 28 days of the Court granting Preliminary Approval.

**12. The Court Should Set a Hearing for Final Approval**

The parties request that the Court set a hearing for final approval of the settlement to occur approximately 150 days after the Court grants preliminary approval of the proposed settlement. This date will allow a reasonable period for the class notices to be mailed and for class members to object or opt-out of the settlement but will not unduly delay the case's adjudication. The timeline envisioned for administration is as follows:

| Time | Event |
|---|---|
| Within 28 days of preliminary approval | Defendants provide Class Counsel and the Administrator with the final list of class members, their contact information, and relevant wage and reimbursement data. |
| Within 7 days after receiving the class list | The Administrator will send the notice to the class members. |
| Up to 60 days after mailing notices | Class members must opt-out or object to the settlement. |
| Within 45 days of the notice period deadline | Plaintiffs will draft and file a motion for final approval. |
| Approximately 150 days after preliminary approval | The Court will hold a Final Fairness Hearing |
| Within 40 days of the Court's final approval Order | The Claims Administrator will distribute payments to Class Member and Class Counsel |

**13. Conclusion**

For the foregoing reasons, Plaintiffs respectfully request the Court to enter an Order (1) granting preliminary approval of the settlement; (2) provisionally approving Class Counsel's

12

request for attorneys' fees and costs; (3) approving Plaintiff's service award; (4) directing distribution of the Class Notice and Claim Form to class members; and (5) setting the final fairness hearing date.

Respectfully submitted,

*/s/ Laura E. Farmwald*
Andrew R. Biller (Ohio Bar # 0081452)
Andrew P. Kimble (Ohio Bar # 0093172)
Laura E. Farmwald (Ohio Bar #0095304)
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*lfarmwald@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiffs and putative class*

## **Certificate of Service**

The undersigned hereby certifies that a copy of the foregoing was served upon counsel for Defendants through the Court's ECF system.

*/s/ Laura E. Farmwald*
Laura E. Farmwald