IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND

Matthew Branning, *et al.*,

*On behalf of themselves and those similarly situated*,

Plaintiffs,

v.

Romeo's Pizza, Inc., *et al.*,

Defendants.

Case No. 1:19-cv-2092

Judge Solomon Oliver, Jr.

ORDER GRANTING FINAL SETTLEMENT APPROVAL

This case is before the Court on Plaintiff Matthew Branning's Unopposed Motion for Final Settlement Approval. On June 8, 2022, this Court preliminarily approved the settlement, attorney's fees, incentive award, and ordered the distribution of notice of the settlement to class members. The notice period has concluded. The Court has reviewed Plaintiff's Motion. Doc. 116. On November 9, 2022, the Court conducted a Final Fairness Hearing. For the reasons stated in this Order, the Court **GRANTS** Plaintiff's Motion.

**1. Background of the Lawsuit and the Claims**

Plaintiff Matthew Branning filed this wage and hour lawsuit on September 11, 2019. *See* Complaint, Doc. 1. This lawsuit alleges several wage and hour claims, predominantly centered on

Defendants' vehicle reimbursement policy.[1] Second Amended Complaint, Doc. 66. Specifically, Plaintiff alleges that Defendants required delivery drivers to provide their own vehicles to deliver Defendants' pizza and other food and under-reimbursed Plaintiff and the class for the cost of their vehicle expenses.

Under the Fair Labor Standards Act, pizza delivery drivers' vehicles are "tools of the trade." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 WL 5800594, 2018 U.S. Dist. LEXIS 189878, at *11 (S.D. Ohio Nov. 5, 2018). Accordingly, employers must ensure that they reimburse drivers for the costs related to those vehicles, to the extent that the failure to do so would drop the workers' wage below minimum wage. *See* 29 C.F.R. § 531.35; *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972).

Here, Plaintiff alleges that Plaintiff (and his fellow drivers) incurred automobile related expenses that dropped their wages below the statutory minimum. This failure, if proven, would trigger a minimum wage violation and the forfeiture of the tip credit. *McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 245–46 (4th Cir. 2016) ("To be eligible for the 'tip credit' under the FLSA… defendants were required to pay dancers the minimum wage set for those receiving tip income and to notify employees of the 'tip credit' provision."). As a result of this alleged failure, Plaintiff brings claims for unpaid minimum wages under the Fair Labor Standards Act and the Ohio Constitution, Article II, Section 34a.

Plaintiff also alleges Defendants' actions violate the Ohio Prompt Pay Act, O.R.C. 4113.15. The Ohio Prompt Pay Act encompasses two types of claims. First, courts have repeatedly held that

---

[1] There are two named Plaintiffs in this lawsuit. Plaintiff Bradley Dietrich asserts the same claims stemming from alleged mileage expense under-reimbursement policies against Defendants Romeo's Parma, LLC, BDS Brunswick, LLC, and BDS Brook Park, LLC, but will pursue Rule 23 certification and litigation of those claims separately.

a violation of any other wage statute (like the FLSA) triggers a failure to timely pay wages under the Prompt Pay Act. *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385, n.1 (6th Cir. 2016); *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *4–5 (S.D. Ohio May 17, 2021). In other words, the Prompt Pay Act requires employers to timely pay wages owed for any reason, whether statutory or otherwise. *Id.* Second, the Ohio Prompt Pay Act allows an employee to recover liquidated damages, but only if the wages due are not in dispute. O.R.C. 4113.15(B). Defendants contend that, here, the wages at issue are in dispute. If Defendants prevailed on this issue, the Prompt Pay Act would allow only for the recovery of unpaid wages, if proven. *Id.* As above, Defendants dispute liability as well as the extent of Plaintiff's underlying wage claim.

Plaintiff also alleges Defendants' actions violate the Ohio Liability for Criminal Acts statute. Ohio Revised Code Section 2307.60 imposes civil liability for criminal acts. A willful violation of the FLSA is a criminal act. 29 U.S.C. 216(a). As above, Defendants contend that, to the extent there is liability at all, they did not act willfully. If Defendants prevailed on this argument, they would not be liable under O.R.C. § 2307.60. On the other hand, if Plaintiff prevailed in proving a willful violation of the FLSA, then O.R.C. § 2307.60 would impose additional damages on Defendants, including punitive damages. O.R.C. 2307.60(A)(1).

Finally, Plaintiff contends that Defendants have been unjustly enriched by their employment arrangement with their delivery drivers. Plaintiff contends that by using their own cars during their work for Defendants that they have conferred a benefit upon Defendants greater than their under-reimbursement damages. Plaintiff argues that because Defendants' employment

practices violated the law, which is disputed by Defendants, it is unjust for Defendants to retain that benefit without commensurate compensation.

Defendants dispute liability of each of Plaintiff's claims. Moreover, Defendants dispute Plaintiff's calculation of and measure of damages, should liability be established.

Since the inception of this lawsuit, the parties have been litigating the issues involved by participating in discovery and through the briefing and filing of Motions to Dismiss, Motions to Bifurcate, and Motions to Compel.

Plaintiff's Combined Motion for Rule 23 Class Certification and FLSA Conditional Certification was granted ton March 29, 2022. The Order certified this action as a class action and designating Plaintiff Branning as the representative of the following class:

> All current and former delivery drivers employed by Defendants Spackler, Smails, and Noonan Pizza Company; The Summer of George Pizza Company, LLC; DMTB Pizza Company; I Don't Always Eat Pizza Company, LLC; Rob Braun; Thomas Fiala; John O'Keefe; David Leisinger; the Estate of Michael Hudson, and Robert Gligora in the State of Ohio between the date three years prior to the filing of the original complaint and the date of final judgment in this matter ("Spackler Rule 23 Class").

Shortly thereafter, the Parties reached a negotiated settlement.

**3. Summary of Settlement Terms**

The Court has already scrutinized the Parties' settlement and previously granted preliminary approval. *See* Doc. 113. To review, the settlement agreement creates a settlement fund of $250,000.00, inclusive of attorneys' fees, expenses, claims administration fees, and service awards. *See* Doc. 111-1. Under the terms of the Agreement, unless they decide to opt out, each class member who worked for the Spackler Defendants at any time between September 11, 2016, and

December 31, 2019, will receive a share of the settlement fund. For purposes of the settlement agreement, "Class Member" means:

> All non-exempt hourly delivery drivers who worked at the Spackler Defendants' Romeo's stores during the period from September 11, 2016, to December 31, 2019, who do not exclude themselves from the Lawsuit.

Doc. 111-1.

After subtracting fees, expenses, service awards, and claims administration costs, the remainder of the settlement fund will be distributed based on hours worked as a delivery driver by each Class Member during the period from September 11, 2016, to December 31, 2019 ("Class Period"), divided by the total hours worked as a delivery driver by all Class Members during the Class Period. *Id.*

In exchange for these payments, all class members who cash or negotiate a settlement award check or who did not timely submit an opt-out form, release all FLSA and Ohio wage and hour claims that accrued during the relevant time period (Sep. 11, 2016-Dec. 31, 2019) and which arose out of the facts and claims asserted in the lawsuit. *Id.*

Checks will be distributed to class members within 40 days of a grant of final approval of the settlement. *Id.* Class members will have 180 days from the date the check is issued to cash the check. *Id.* In the event that a check needs to be re-issued to a class member, during the 180-day period, the class member will have 180 days from the date the check was re-issued to cash the check. *Id.* If any checks remain uncashed after 365 days from the first checks being issued, the funds from those uncashed checks will be returned to Defendants. *Id.*

As part of the settlement, Defendants agreed not to oppose Plaintiffs' counsel's request for a fee award that is equal to or less than 1/3 of the Settlement Amount (*i.e.*, equal to or less than

$83,333.33), advanced expenses of approximately $10,339.57, and a $5,000 service award for Plaintiff Matthew Branning.

**4. Standard for Settlement Approval**

Rule 23(e) requires court approval for a class action settlement so that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). As evidenced by the docket and described in Plaintiff's Motion, this case was highly contested. The parties disputed the relevance and importance of the available documents, the applicable legal standards, and how to apply those standards to this case.

A three-step procedure is typically used for approving class-wide settlements. *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2022 U.S. Dist. LEXIS 26005, at *3 (S.D. Ohio Feb. 9, 2022), citing *Merkner v. AK Steel Corp.*, No. 1:09-cv-423, 2011 U.S. Dist. LEXIS 157375, at *1 (S.D. Ohio Jan. 10, 2011). "First, the Court determines whether to preliminarily approve the settlement. Second, notice of the settlement is sent to interested persons. And third, the Court must decide whether to finalize approval after holding a hearing." *Id.*

In evaluating an FLSA settlement and an Ohio law wage and hour settlement, the Court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols., LLC*, 2012 U.S. Dist. LEXIS 74994, at *5 (S.D. Ohio May 30, 2012). The Court must ensure that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arms-length negotiation. *Id.* at *5–6. As described below, the proposed settlement meets this standard.

The Court must ensure that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arms-length negotiation. *Id.* at *19–27. In

determining whether a settlement is fair, reasonable, and adequate, courts in the Sixth Circuit consider six factors when deciding whether to approve a settlement. Those factors include (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and amount of discovery completed; (3) the judgment of experienced trial counsel; (4) the nature of the negotiations; (5) any objections from class members; and (6) the public interest. *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 894–85 (6th Cir. 2019) (citing *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007)).

The Court already determined that five of these six factors favored approving this settlement in its Order granting Plaintiff's Unopposed Motion for Preliminary Approval, finding that "the proposed settlement is fair, reasonable, and adequate." Doc. 113. The sixth factor, class member objections, could not be considered before notice. Now that the notice process has been completed, this factor is ripe for consideration.

On July 13, 2022, Notice of Settlement was mailed to the 194 class members. The notice period concluded on September 12, 2022. During the notice period, notices that were returned in the mail as undeliverable were traced in an to attempt to locate a new address for the class member. In total, 189 class members or 97.42% of the settlement class received at least one form of Notice of the proposed Settlement. This is an excellent result and provided proper notice to the class members. There were no objections and no class member requested to be excluded. Therefore, this factor also weighs in favor of approval. Accordingly, the Court finds that all six fairness factors favor approval.

**5. Attorney's Fees, Advanced Litigation Costs, Settlement Administration Costs, and the Service Award**

**5.1. Attorney's Fees and Expenses**

Class Counsel seeks an award one-third of the settlement fund, ($83,333.33). The Court previously granted preliminary approval of Class Counsel's requested fees and assessing fees as a percentage-of-the-fund. Doc. 113. Since no class member objected following the distribution of notice, the Court has no reason to reconsider its previous findings.

The percentage-fund method has regularly been recognized and approved of in lump sum common fund settlement agreements for wage and hour cases. *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *13 (N.D. Ohio Mar. 26, 2019), citing, *Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *see also Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766, 790 (N.D. Ohio 2010) (the percentage-of-the-fund method is the "preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share"); *Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, at * 14-15 (S.D. Ohio July 11, 2014) (adopting the percentage approach as "the most appropriate method for determining reasonable attorneys' fees" in wage and hour cases); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *5 (S.D. Ohio Nov. 25, 2019) (An award of one-third "is a normal fee amount in a wage and hour case."). "Absent compelling reasons to the contrary, this Court prefers the percentage-of-the-fund method, as it best reflects the FLSA's employee-protection objective." *Dewald v. Time Warner Cable, Inc.*, No. 16-cv-1129, 17-cv-00631, 2021 U.S. Dist. LEXIS 32459, at *16.

An award of one-third "is a normal fee amount in a wage and hour case." *See Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 U.S. Dist. LEXIS 204371, at *5 (S.D. Ohio Nov. 25, 2019); *see also Dewald v. Time Warner Cable Inc.*, 2021 U.S. Dist. LEXIS 32459, at *14 (S.D. Ohio Feb. 16,

2021) ("When using the percentage-of-the-fund method, courts in this Circuit generally approve of awards that are 1/3 of the total settlement.").

The Court finds this request for attorney's fees to be fair, adequate, and reasonable and therefore GRANTS Class Counsel's request for attorneys' fees in the amount of $83,333.33. The Court also APPROVES Class Counsel's request for $10,339.57 in advanced litigation costs and claims administration costs estimate of $10,500.00 as fair, adequate, and reasonable.

### 5.2 Services Award

The Court also approves the request for a service award in the amount of $5,000 to Plaintiff Matthew Branning. Mr. Branning provided valuable insight to Class Counsel throughout the case, and his efforts contributed to the settlement. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997). The $5,000 service award to Plaintiff Matthew Branning is well within the range of approved service awards. *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997); *Dun & Bradstreet*, 130 F.R.D 366, 374 (S.D. Ohio 1990); *Chrismon v. Meadow Greens Pizza*, 2020 U.S. Dist. LEXIS 119873, at *14 (E.D.N.C. July 7, 2020).

## 6. Conclusion

The Court hereby GRANTS Plaintiff's Unopposed Motion for Final Settlement Approval. The Court further GRANTS Plaintiffs' attorney's fee request of $83,333.33, grants an award of class counsel expenses of $10,339.57, reasonable administrative expenses paid to the claims administrator, and the $5,000 service award for the class representative Matthew Branning.

The Parties to this settlement agreement and their claims asserted in this action are hereby DISMISSED WITH PREJUDICE, with the Court to retain jurisdiction over the implementation, administration, enforcement of this Judgment and the Settlement Agreement, and all matters ancillary thereto. The Parties are ordered to carry out the settlement according to its terms.

IT IS SO ORDERED, this ______9th______ day of November, 2022.

*/S/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE