UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRADLEY DIETRICH, *on behalf of himself and those similarly situated*, | ) ) ) | Case No.: 1:19 CV 2092 |
| Plaintiffs | ) ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) ) | |
| ROMEO'S PIZZA, INC., *et al.*, | ) ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case is Plaintiff Bradley Dietrich's ("Plaintiff" or "Dietrich") Combined Motion for Class Certification Pursuant to Federal Rule of Civil Procedure ("Rule") 23 and Motion for Conditional Certification under the Fair Labor Standards Act ("FLSA") ("Motion") (ECF No. 141). For the reasons that follow, the court grants Plaintiff's Motion.

## I. BACKGROUND

### A.    Factual Background

This dispute centers on Plaintiff's contention that BDS Brunswick, LLC ("Romeo's Brunswick"), BDS Brookpark, LLC ("Romeo's Brookpark"), Romeos Parma, LLC ("Romeo's Parma"), and Ryan Rose (collectively, "Defendants") required delivery drivers to provide their own vehicles for their work, but inadequately reimbursed them for work-related vehicle expenses, which caused them to be paid less than the minimum wage.

Dietrich alleges that he worked at several Romeo's Pizza stores in northeast Ohio beginning in December 2014. (Second Am. Compl. ¶ 266, ECF No. 66.) At each store, Dietrich worked both inside the restaurant and as a delivery driver. (*Id.* ¶ 273.) When Dietrich worked as a delivery driver, he was paid a minimum wage, minus a tip credit, as an hourly rate for hours worked delivering pizzas. (*Id.* ¶ 271.) Throughout his employment, Plaintiff has been required to use his own car to deliver pizzas. (*Id.* ¶ 275.) Dietrich alleges that he was required to incur vehicle expenses in order to perform his duties as a delivery driver, including, but not limited to, depreciation, gasoline, maintenance, insurance, financing, and licensing. (*Id.* ¶ 279.) Instead of being reimbursed for his actual delivery-related expenses, Dietrich was paid $1.25 flat rate per delivery, and $0.23 per mile in reimbursement, depending on the time frame. (*Id.* ¶ 277.) Plaintiff asserts that Defendants applied this reimbursement policy to all delivery drivers, and that Defendants' reimbursement policy caused delivery drivers' wages to drop below the statutory minimum. (Mot. at PageID 5091.)

## B.     Procedural History

On September 11, 2019, Matthew Branning filed a class action Complaint in this court, on behalf of himself and other similarly-situated delivery drivers, asserting the following five claims for relief: (1) failure to pay minimum wages in violation of the Fair Labor Standards Act ("FLSA") ("Count One"); (2) failure to pay minimum wages in violation of the Ohio Constitution ("Count Two"); (3) untimely payment of wages in violation of Ohio Revised Code § 4113.15 ("Count Three"); (4) damages, pursuant to Ohio Revised Code § 2307.60 ("Count Four"); and (5) unjust enrichment ("Count Five"). (*See generally*, ECF No. 1.) Since filing his original Complaint, Branning subsequently amended his Complaint twice and added Bradley Dietrich as a Plaintiff, without objection from Defendants, and after obtaining leave of the court. (ECF Nos. 63–66.)

-2-

Following a Settlement Agreement, on January 16, 2023, (*See* ECF No. 124), Plaintiff Matthew Branning and the following Defendants were terminated from the litigation: Spackler, Smails, and Noonan Pizza Company; The Summer of George Pizza Company, LLC; I Don't Always Eat Pizza Company, LLC; Robert Braun; Charles Thomas Fiala; John O'Keefe; David Leisinger; the Estate of Michael Hudson; and Robert Gligora.

On October 22, 2024, Dietrich, on behalf of himself and other similarly-situated delivery drivers, filed the instant Combined Motion for Rule 23 Class Certification and FLSA Conditional Certification (ECF No. 141). Dietrich asks the court to certify, and designate him as the representative of, the following class, pursuant to Rule 23:

> All current and former delivery drivers employed by Defendants at Defendants' Romeo's Pizza stores in the State of Ohio between the date three years prior to the filing of the original Complaint and December 31, 2019 ("Rule 23 Class").

(Mot. at PageID 5087.) In addition, Plaintiff asks the court to conditionally certify the following class under the FLSA, pursuant to 29 U.S.C. § 216(b):

> All current and former delivery drivers employed at Defendants' Romeo's Pizza stores between the date three years prior to the filing of the original complaint and December 31, 2019 ("FLSA Collective").

(*Id.* at PageID 5088.)

On December 2, 2024, Defendants filed Opposition (ECF No. 145) to the instant Motion, to which Dietrich filed a Reply (ECF No. 146) on December 19, 2024.

-3-

## II. LEGAL STANDARD

### A.      Class Certification Under Rule 23

The Sixth Circuit has explained that "[t]o obtain class certification, the plaintiffs must show that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (citing Fed. R. Civ. P. 23(a)). These four requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. The Sixth Circuit has also made clear that "[i]n addition to fulfilling the four prerequisites of Rule 23(a), the proposed class must also meet at least one of the three requirements listed in Rule 23(b)." *In re Whirlpool Corp.*, 722 F.3d at 850. District courts have "broad discretion to decide whether to certify a class." *Id.* (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996).

### B.      FLSA Conditional Notice

Under 29 U.S.C. § 216(b) of the FLSA, an employee may bring an action on behalf of herself and others "similarly situated." 29 U.S.C. § 216(b). Each employee wishing to join the collective action must affirmatively "opt-in" by filing written consent. *Id*. District courts have discretion to facilitate notice to potential plaintiffs. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989). Before facilitating notice, however, courts must determine whether the potential class members are similarly situated under § 216(b). *Id.* In *Clark v. A&L Homecare and Training Ctr.*, LLC, 68 F.4th 1003, 1011 (6th Cir. 2023), the Sixth Circuit established a heightened standard for the "similarly situated" FLSA notice inquiry:

-4-

> [F]or a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a "strong likelihood" that those employees are similarly situated to the plaintiffs themselves. That standard requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance. The strong-likelihood standard is familiar to the district courts; it would confine the issuance of court-approved notice, to the extent practicable, to employees who are in fact similarly situated; and it would strike the same balance that courts have long struck in analogous circumstances.

*Clark*, 68 F.4th at 1011 (internal citations omitted).

If a district court determines that the employees are similarly situated, it moves to the next phase of the inquiry. The second phase occurs after "all of the opt-in forms have been received and discovery has concluded." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). During this phase, courts have discretion to make a more thorough finding regarding the "similarly situated" requirement. *Id.* at 547. Should the court determine "claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice." *Douglas v. GE Energy Reuter Stokes*, No. 1:07-CV-077, 2007 WL 1341779, at *4 (N.D. Ohio Apr. 30, 2007).

### III. LAW AND ANALYSIS

#### A.  The Import of *Parker*

The court begins its analysis by addressing a central issue raised by the parties: whether the Sixth Circuit's decision in *Parker v. Battle Creek Pizza, Inc.*, 95 F.4th 1009 (6th Cir. 2024), outright precludes class certification in this case. *Parker* consolidated two class actions in which the parties disagreed about how pizza delivery drivers should be reimbursed for the costs of providing their vehicles for their work, consistent with the FLSA. The plaintiffs in *Parker* advocated for

-5-

reimbursements at the IRS standard mileage rate, whereas the defendants argued that reimbursements at an employer-determined "reasonable approximation" was sufficient for FLSA compliance.

In rejecting both the plaintiffs' and the defendants' arguments as to the proper method for measuring the costs an employee incurs, the *Parker* court concluded that the "statute entitles a minimum-wage employee to reimbursement of his *actual costs* incurred on his employer's behalf[;]" neither the employer's estimate nor the IRS rate will suffice. 95 F.4th at 1018 (emphasis added).

Relying on *Parker*, Defendants assert that, because the Sixth Circuit clarified that actual expenses are to be used in determining whether vehicle costs cause employees to earn less than the minimum wage, class certification on this issue is prohibited. (Opp'n at PageID 5496.) Plaintiff, in turn, argues that "[e]ven though FLSA rights are individual, not collective rights, the FLSA has always recognized that those individual rights can be adjudicated collectively." (Reply at PageID 5613 (citing 29 U.S.C. § 216(b)).) Plaintiff further asserts that nothing in *Parker* alters whether workers may pursue this type of FLSA claim in a collective or class action. (*Id.*) Plaintiff's argument is well-taken.

Taken at face value, the interpretation of *Parker* that Defendants advance would prevent class certification in delivery driver wage cases writ large. However, the Sixth Circuit's conclusion in *Parker* is narrower than Defendants advocate:

> § 206(a)(1)(C) mandates that "each" employee be paid at least the specified minimum wage. By its terms, that is an individual entitlement, not a generalized collective one. And that entitlement extends no further than reimbursement of the employee's actual costs incurred on his employer's behalf.

95 F.4th at 1017.

While calculating each individual's underpayment may prove complex in a collective action, the court finds that such complexity does not prohibit class certification, should it otherwise be merited. Defendants' asserted interpretation of *Parker* would shift the burden of this payment arrangement onto employees. However, where the defendants in *Parker* argued that computing actual costs would be impossible, the Sixth Circuit indicated that companies more properly bear the burden of the issues this arrangement creates.

> [T]he employers themselves created this situation: first by paying their drivers the bare minimum wage; then by requiring them to provide their own vehicles to deliver pizzas on the defendants' behalf; and finally by cutting it close (at least according to the allegations here) as to whether they have adequately reimbursed their drivers for the cost of providing those vehicles.

*Id.* at 1016.

Thus, the court finds that *Parker's* conclusion that actual expenses are to be used for driver reimbursements does not outright preclude collective action in FLSA delivery driver cases. As such, the court will proceed with considering the merits of the Motion.

**B.      Rule 23 Class**

Plaintiff moves the court for an Order certifying the Rule 23 Class. In order to obtain class certification under Rule 23, Plaintiff must show that the class certification prerequisites are met, and that he, as the class representative, "possess[es] the same interest and suffered the same injury as the class members [he] seek[s] to represent." *In re Whirlpool Corp.*, 722 F.3d at 851. The court first addresses the four requirements of Rule 23(a) before considering whether class certification is appropriate under Rule 23(b).

*1.       Rule 23(a)(1) Numerosity*

-7-

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). The Sixth Circuit has explained that "[w]hile no strict numerical test exists, 'substantial' numbers of affected consumers are sufficient to satisfy this requirement." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012); *see also Castillo v. Morales, Inc.*, 302 F.R.D. 480, 487 (S.D. Ohio 2014) (stating that "[o]ften, a class of 40 or more members is sufficient to meet the numerosity requirement").

Here, Plaintiff asserts that the first requirement of Rule 23(a) is satisfied because he expects that "there are approximately 100 putative class members based on Defendants' data produced and representations during depositions." (Mot. at PageID 5100.) Defendants argue that numerosity has not been established because "Dietrich does not offer any evidence to establish that any of the Defendants underpaid him, let alone that all delivery drivers were underpaid." (Opp'n at PageID 5500.)

The deposition and exhibits cited by Plaintiff include dated and time-stamped delivery driver logs identifying at least 59 drivers, their wages, and the delivery compensation paid by the employer at each instance. (Mot. at PageID 5100.) Defendants would have the court conclude that each of the 59 drivers must prove their underpayment before class certification could occur. However, such proof is not required at this stage. *See e.g.*, *In re Whirlpool Corp.*, 722 F.3d at 852 ("Whirlpool shipped thousands of Duets to Ohio for retail sale. Evidence of these shipments to retailers is sufficient to show numerosity of a class consisting of all Ohio residents who purchased a Duet in Ohio primarily for personal, family or household purposes.") Furthermore, Defendants provide no evidence to contradict that which Plaintiff relies upon to establish numerosity.

-8-

Considering Plaintiff's claim that the class may include approximately 100 members, combined with the delivery, reimbursement, and wage data from 59 distinct drivers that Plaintiff cites, the court finds that the numerosity requirement is satisfied.

### 2.    *Rule 23(a)(2)–(3) Commonality and Typicality*

The Sixth Circuit has explained that "Rule 23(a)(2) requires plaintiffs to prove that there are questions of fact or law common to the class, and Rule 23(a)(3) requires proof that plaintiffs' claims are typical of the class members' claims." *Young*, 693 F.3d at 542. In showing commonality, the plaintiff must demonstrate that their claims "depend on a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Typicality is met when the named plaintiff's interests are "aligned with those of the represented group, and in pursuing his own claims, [he] will also advance the interests of the class members." *Id*. The Sixth Circuit has also stated that, "[t]hese requirements 'tend to merge' because both serve as guideposts for determining whether  the interests of the class members will be fairly and adequately protected in their absence." *Mays v. LaRose*, 951 F.3d 775, 793 (6th Cir. 2020).

Here, Plaintiff contends that the commonality requirement is satisfied because the proposed class consists of employees that were harmed in the same way. (Mot. at PageID 5100.) In describing Defendants' allegedly unlawful policies, Plaintiff asserts that Defendants: (1) required their delivery drivers to provide cars to complete their job duties, (2) paid delivery drivers a tip credit rate per hour, (3) did not track or reimburse delivery drivers' actual expenses, and (4) did not reimburse the delivery drivers for their actual costs. (*Id.* at PageID 5101.)

Plaintiff asserts that these policies together resulted in Defendants paying their delivery drivers less than the minimum wage. (*Id.*) Defendants counter, as they argued on the prior Motion for Certification, with respect to the class that was terminated pursuant to the settlement agreement, that the commonality requirement is not satisfied because the court would have to make individualized determinations—since the drivers' actual expenses would vary from driver to driver. (Opp'n at PageID 5501.)

Defendants cite *Tarrify Properties, LLC v. Cuyahoga County*, 37 F.4th 1101, 1106 (6th Cir. 2022), for the proposition that the necessity for individualized determinations prohibits certification. (Opp'n at PageID 5500–01.) In *Tarrify*, owners of foreclosed properties sued, challenging the county's alternative tax foreclosure program, wherein foreclosure proceedings were instituted in a county board of revision rather than in court, and landowners did not receive the excess equity for the disposition of their property. *Id.* at 1105–06. The Sixth Circuit in *Tarrify* detailed its reasoning for concluding that class certification was inappropriate:

> The key impediment in this case is that the court must ask whether a given property's fair market value exceeds the taxes owed at the time of the transfer to determine who is in the class. Determining fair market value requires an independent and individualized assessment of each absent class member's property. As the appraisal experts on both sides agree, the valuation of real property depends on many circumstances, including the size, location, use, and condition of the property and the relevant market conditions at the time of the transfer. The market and physical conditions of each property will vary. So too will the dates of each transfer. As such, a court must conduct an individualized, fact-intensive, and adversarial process to determine the fair market value for each property.

*Tarrify*, 37 F.4th at 1106. Defendants' argument, that vehicle expenses are similarly difficult to ascertain as the fair market value of a property, is not well-taken. Indeed, the Sixth Circuit in

-10-

*Parker*, while noting the difficulty courts may face when calculating damages in this type of class action, indicated at least one method for managing this issue:

> For example, the employee might present prima facie proof that a reimbursement was inadequate; the employer might then bear the burden of showing that the reimbursement bore a demonstrable relationship to the employee's actual costs; and then the employee would bear the burden of proving the employer's reasoning wrong. Or perhaps such an arrangement might not be appropriate. In any event, the parties and the district courts might want to consider these or other ideas on remand.

95 F.4th at 1019.

Furthermore, while each putative class member will have to substantiate the vehicle costs they incurred on behalf of their employer during the relevant period, there will likely be significant overlap in terms of the nature of the proof offered and the methodology for the calculation of damages. For example, the costs will likely involve a handful of discrete categories such as maintenance, mileage, and depreciation, and the parties may seek to utilize a tailored formula to calculate actual costs through the use of experts. It is instructive that one of the reasons that the Sixth Circuit rejected the use of the IRS rate was because it did not closely approximate expenses relevant to the locality and vehicle characteristics. *Id.* at 1016–17. Implicitly, it did not rule out courts' use of more accurate measures that closely mirror actual costs. *Id.* Thus, while the court finds that calculating damages may be an involved process, it finds no basis to conclude at this stage that the process would be so difficult as to prohibit certification.

When Defendants raised this issue in opposition to the Motion for Certification of class in that portion of the case that was settled , the court noted that several federal district courts have found the commonality requirement satisfied in delivery driving related under-reimbursement cases, even when individualized assessments are necessary to calculate damages. *See Brandenburg v.*

-11-

*Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2018 WL 5800594, at *4 (S.D. Ohio Nov. 6, 2018) (explaining that "[w]hile [the] [d]efendants' argument may, theoretically, be possible for some delivery drivers, the need for individualized inquiry and calculation of damages is not enough to defeat commonality under Rule 23(a)(2)"); *see also Waters v. Pizza to You, LLC*, No. 3:19-CV-372, 2021 WL 229040, at *7 (S.D. Ohio Jan. 22, 2021) ("[w]hile the extent of [the] [d]efendants' under-reimbursement might be different from driver to driver or location to location the need for individualized inquiry and calculation of damages alone is not enough to defeat commonality"); *see also McFarlin v. Word Enters, LLC*, No. 16-CV-12536, 2017 WL 4416451, at *3 (E.D. Mich. Oct. 5, 2017) (determining that "the fact that there will need to be individualized inquiry in this case as to the amount of damages for each delivery driver is not enough to invalidate commonality").

Defendants would have the court reverse course in light of *Parker*, as discussed above. (Opp'n at PageID 5501–02.) However, the court finds that the Sixth Circuit's directive in *Parker* that actual costs, instead of estimates, must be used in delivery driving related under-reimbursement cases, does not so drastically change the nature of the calculations that class certification would now be prohibited. Thus, the court continues to find that the above-cited decisions are well-reasoned and persuasive, and support the court's conclusion that the question of whether Defendants' reimbursement policy caused their delivery drivers' wages to fall below the minimum wage is a common question that is capable of class-wide resolution.

With respect to typicality, Defendants argue that the court should deny class certification for want of typicality for two reasons: 1) Defendants contend that Dietrich's claims are not typical of other proposed class members because he has failed to show that he suffered any injury or underpayment, thus he cannot adequately represent the class (Opp'n at PageID 5502); and 2)

Defendants argue that, "[e]ven if he could show some underpayment, that would not establish that other class members were similarly underpaid. The individualized nature of each delivery driver's claim destroys any finding of typicality." (*Id.*)

In the Second Amended Complaint, Dietrich alleges that he worked at Defendants' establishments during the relevant period and that each store required him to use his own vehicle to deliver pizzas. (Second Am. Compl. at ¶¶ 271, 275, ECF No. 66.) As a result, Dietrich alleges that he "has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs" all for the primary benefit of his employer. (*Id.* ¶ 280.) Dietrich further asserts that the reimbursement Defendants provided for the use of his vehicle was insufficient to cover the costs, thus Defendants failed to pay him the minimum wage as required by law. (*Id.* ¶¶ 276, 290.) Defendants do not cite to evidence in the record to contradict Dietrich's assertion that he was underpaid. (Opp'n at PageID 5502.)

Defendants first assert that, because Dietrich has not proven that his actual expenses exceeded his reimbursements at this stage, the typicality requirement is not satisfied. (Opp'n at PageID 5502.) Plaintiff asserts that Defendants' reimbursement policies caused him and other delivery drivers to be paid less than is required by both the FLSA and Ohio law, and that "typical does not mean identical, and the typicality requirement is liberally construed." (Mot. at PageID 5101 (citing (*Swigart v. Fifth Third Bank*, 288 F.R.D. 177 (S.D. Ohio 2012)).) As courts in this circuit have noted, "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the

-13-

same legal theory." *Kirkbride v. Kroger Co.*, 349 F.R.D. 160, 186 (S.D. Ohio 2025) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)).

Defendants do not dispute that Dietrich was a driver during the relevant period, nor do they dispute that he was subject to the challenged reimbursement policy. Rather, they argue that Plaintiff must prove that his actual expenses were greater than the reimbursement provided prior to certification. (Opp'n at PageID 5502.) The court finds no basis to depart from its prior reasoning that, "while the parties dispute whether the reimbursement [Branning] received exceeded his actual delivery-driving related expenses, the court concludes that resolving that dispute would amount to a trial on the merits, which is not appropriate at this stage of the litigation." (ECF No. 104 at PageID 4527 (citing *In re Whirlpool Corp.*, 722 F.3d at 851–52 (explaining that "district courts may not turn the class certification proceedings into a dress rehearsal for the trial on the merits")).) Accordingly, the court finds that the typicality requirement is met.

### 3.    *Rule 23(a)(4) Adequacy of Representation*

Rule 23(a)(4) requires that, "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has set forth a two-pronged test for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996).

The court finds that the first prong is satisfied because Plaintiff is challenging the same allegedly unlawful reimbursement policy and seeking the same relief as the putative class. As for the second prong, Plaintiff asserts that he is "ready, willing, and able to fulfill his duties and has done

so to date." (Mot. at PageID 5102.) Moreover, Plaintiff's counsel "Biller & Kimble, LLC, has established an expertise in wage and hour cases in general, and specifically in pizza delivery driver wage and hour cases." (*Id.* at PageID 5103.)

The court concludes that Plaintiff is an adequate class representative as he has continuously pursued his claims since the outset of this litigation. Further, the court finds that Plaintiff's counsel is qualified to represent the class, as several courts have recognized their expertise in pizza delivery driving wage and hour litigation. *See Waters*, 2021 WL 229040, at *8 (S.D. Ohio Jan. 22, 2021) (recognizing Plaintiff's counsel's expertise in pizza delivery driver litigation); *see also Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *5 (S.D. Ohio Jan. 18, 2019) (same); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *6 (S.D. Ohio Nov. 25, 2019) (same). Consequently, the court finds that adequacy of representation is demonstrated.

### 4.     *Rule 23(b)(3) Predominance and Superiority*

Having determined that Plaintiff has satisfied the requirements of Rule 23(a), the court turns to the issue of whether Plaintiff has satisfied one of the three conditions set forth in Rule 23(b). Rule 23(b) provides:

> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
>
> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other

members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b). Plaintiff asserts that it meets the third requirement, pursuant to Rule 23(b)(3).

He maintains that common questions of law and fact predominate. (Mot. at PageID 5103.)

The Sixth Circuit has explained that "[t]o meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young*, 693 F.3d at 544. In addressing the superiority requirement, courts consider "the difficulties likely to be encountered in the management of a class action." *Id*. at 545. Rule 23(b)(3) lists four factors that are pertinent to the issue of superiority: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating

-16-

the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D).

Plaintiff asserts that common issues of law and fact predominate because Defendants used the same reimbursement methodology for all of their delivery drivers. That method, of reasonable approximation, is not permissible, as clarified in *Parker*. (Mot. at PageID 5104 (citing *Parker*, 95 F.4th 1009 at 1016).) Moreover, Plaintiff asserts that the claims of Plaintiff and the putative class rise and fall on Defendants' reimbursement and pay policies and that the proof needed to substantiate the claims will be common to all class members. (*Id.*) In contrast, Defendants argue that the instant claims require highly individualized assessments to determine whether vehicle expenses exceeded the reimbursement rate.  Thus, a common policy cannot form the basis of a class-wide claim that delivery drivers were underpaid because the individualized inquiries are not limited to determining damages, but are also necessary to determine whether there is any liability at all. (Opp'n at PageID 5501.)

Defendants' argument is not well-taken. The court finds that there are common issues of law and fact which make this case proper for certification. *See e.g., McFarlin v. Word Enters.*, No. 16-CV-12536, 2017 WL 4416451, at *4 (E.D. Mich. Oct. 5, 2017) ("Although the damages for each delivery driver will be an individual determination, the damages arise from a course of conduct that is applicable to the entire class: Defendants' payroll practices. Therefore, the predominance requirement is met.")

Turning to the superiority requirement, the court finds that all of the factors listed in Rule 23(b)(3)(A)–(D) weigh in favor of certification. Here, there is no evidence that the putative class has an interest in maintaining a separate action (factor one), nor is there any indication that there is

-17-

similar litigation pending in another court (factor two). The court also concludes that judicial efficiency "weighs in favor of concentrating the litigation of the claims in this court" (factor three) because the claims in this case involve policies affecting a large number of employees, and a resolution on the matter "avoids competing decisions on the issues and offers finality." *Waters*, 2021 WL 229040, at *10. Lastly, the court acknowledges, in light of *Parker*, that there will be some difficulty in calculating damages for each class member (factor four). But the court does not find that the process would be so prohibitive as to prevent class certification.

      *5.    Rule 23 (c)(2) Notice*

      Rule 23(c)(2) states that, "[f]or any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

      Plaintiff attached a proposed Rule 23 notice ("Proposed Rule 23 Notice"), to be distributed through U.S. mail and e-mail as an exhibit to the Motion for Certification. (ECF No. 141–5 at PageID 5434–37.) Defendants lodge no specific objections to the proposed Rule 23(c)(2) notice.

      The proposed Rule 23(c)(2) notice advises each member that the court will exclude them from the class if requested by a specific date. (Ex. 5 at PageID 5437, ECF No. 141–5 ("Class Members who wish to opt out from the Lawsuit entirely must submit a timely and valid opt out statement to Class Counsel within 60 days of this notice.").) It further notes that the judgment, whether favorable or not, will include all members who do not request exclusion, with respect to the state law claims. (*Id.* at PageID 5435 ("If you do nothing, you automatically join the case, but only for the state law claims. You do not join for the federal law claims.").) The notice also states that an

-18-

individual may enter an appearance through their own counsel. (*Id.* at PageID 5437 ("You also have the right to obtain your own counsel and file your own lawsuit.").)

Finding that the proposed Rule 23(c)(2) notice clearly defines the action and includes the requisite information, and given that Defendants identify no deficiencies in the proposed notice, the court finds that the proposed notice constitutes the best notice practicable. Fed. R. Civ. P. 23(c)(2).

## B.      FLSA Conditional Notice

### 1.      *Similarly Situated*

Dietrich moves for conditional notice pursuant to Section 216(b) of the FLSA. As discussed, under 29 U.S.C. § 216(b) of the FLSA, an employee may bring an action on behalf of herself and others "similarly situated." 29 U.S.C. § 216(b). Unlike a Rule 23 action, "an FLSA collective action is not representative—meaning that 'all plaintiffs in an FLSA action must affirmatively choose to become parties by opting into the collective action.'" *Clark v. A&L Homecare and Training Ctr., LLC*, 68 F.4th 1003, 1009 (6th Cir. 2023) (quoting *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 402 (6th Cir. 2021)). To prevail at the initial notice stage, a plaintiff must show a "strong likelihood"[1] that those employees are similarly situated to the plaintiff[.]" *Clark*, 68 F.4th at 1011.

The Sixth Circuit has noted that, "[w]hether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies . . . ." *Id.* at 1010. Here, Plaintiff contends that the delivery drivers are similarly situated because they have been subjected to the same terms of employment and

---

[1]      Prior to *Clark*, courts would facilitate notice of an FLSA suit upon a modest factual showing that the parties were similarly situated. *Id.* at 1008. However, in *Clark*, the Sixth Circuit established a heightened standard, requiring that plaintiffs demonstrate a "strong likelihood" that employees are similarly situated. *Id.* at 1011.

compensation, have the same job duties, were subject to the same policies which required them to use their own cars for work, and were all not compensated for their actual expenses prior to January 1, 2020. (Mot. at PageID 5107–08.) Thus, they argue that the proof they offer exceeds the "strong likelihood" showing that Plaintiff and other delivery drivers are similarly situated. (*Id.*)

Defendants reprise their arguments that *Parker* necessitates a highly individualized analysis and that the ultimate question is "not whether the reimbursement practice itself constituted a violation of the FLSA, but rather whether Dietrich's or other drivers' vehicle-related costs cut into the minimum wage." (Opp'n at PageID 5504.) Defendants argue that the central question cannot be addressed on a collective basis, thus conditional certification should not be granted. (*Id.*)

As discussed above, the court does not find that *Parker* prohibits conditional notice. After considering the evidence in the record and relevant law, the court finds that Plaintiff has carried his burden of showing a strong likelihood that he and the delivery drivers are similarly situated because Plaintiff has sufficiently demonstrated that Defendants' delivery drivers were subject to a compensation policy that caused their wages to fall below the minimum wage.

### 2. *Employer Liability*

Defendants argue that Dietrich cannot seek conditional notice based on the theory that Ryan Rose, rather than BDS Brunswick, was his employer, because Ryan Rose was not Dietrich's employer as a matter of law. (Opp'n at PageID 5504–05.) According to Defendants, despite the fact that Ryan Rose was CEO of the corporate holding company, he did not have operational control of significant aspects of the company's day-to-day operations. (Opp'n at PageID 5505.)

Plaintiff argues that each of the corporate locations implicated were owned and operated by Defendant Ryan Rose, thus Ryan Rose was his employer as a matter of law. (Reply at PageID 5616.)

-20-

The court finds that Plaintiff has put forth significant evidence that Ryan Rose was involved in the companies' operations generally, and in decisions regarding driver compensation specifically.

In the cited Deposition (ECF No. 142), Ryan Rose states that he is the CEO of Romeo's Pizza Holdings, which is the parent company of Romeo's Pizza Franchise. (Sealed Dep. of Ryan Rose at PageID 5443, ECF No. 142.) He further states that he was involved in the decision to maintain guidelines the corporate stores were required to follow (*Id.* at PageID 29); that he is responsible for hiring corporate leadership (*Id.* at PageID 5457); and he specifically states that he was involved in a decision regarding the change to driver reimbursement rates (*Id.* at PageID 57).

Defendants also rely on *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 966 (6th Cir. 1991), *superseded by rule on other grounds,* to assert that conditional notification should not proceed. In response, Plaintiff asserts that this argument is premature. (*Id.* at PageID 5609.) Plaintiff's argument is well-taken. *Dole* is a decision at the summary judgment stage of a litigation, and the Sixth Circuit in *Dole* emphasized that the question of whether an officer has operational control is a highly fact-specific inquiry. 942 F.2d at 965.

Considering the relevant law and evidence presented, the court finds that Ryan Rose's position at the company does not prohibit the giving of conditional notice under the FLSA.

3.      *Equitable Tolling*

Plaintiff requests that the court exercise equitable tolling of the putative FLSA collective, given the length of time that has elapsed since the case began. (Mot. at PageID 5108.) Defendants assert that, even if conditional notice were appropriate, Plaintiff's request for equitable tolling should be denied or, in the alternative, deferred to a later stage. (Opp'n at PageID 5508.) Defendants maintain that, "[n]othing prevented Dietrich from pursuing conditional certification earlier, except

his own delay." (*Id.*) Plaintiff argues that equitable tolling is appropriate because 1) FLSA's remedial purpose warrants liberally granting equitable tolling; 2) diligence is measured by whether potential plaintiffs opted-in when given the opportunity, not by whether those plaintiffs chose to initially bring a lawsuit; and 3) even if Dietrich's diligence were relevant, he has been diligent in bringing this suit. (Reply at PageID 5618.)

While Plaintiff asserts that equitable tolling should be granted at this stage, as discussed above, Plaintiff acknowledges that, "Defendants are correct that the Court could wait until after FLSA notice is distributed" to consider the parties' arguments regarding equitable tolling. (*Id.* at PageID 5619.) Courts in this circuit have reached differing conclusions on whether, after *Clark*, 68 F.4th 1003, the consideration of equitable tolling is premature prior to the opt-in stage. *Contrast*, *Adames v. Ruth's Hosp. Group, Inc.*, No. 1:22-CV-00036, 2024 WL 1533171, at *9 (N.D. Ohio Apr. 9, 2024) (" Plaintiff lacks standing to raise the issue of equitable tolling on behalf of potential opt-in plaintiffs because it would adjudicate rights and responsibilities with respect to individuals not within the court's jurisdiction."), *with Hyde v. Fricker's USA, LLC*, No. 1:22-CV-591, 2024 WL 4197903, at *5 (S.D. Ohio Sept. 16, 2024) ("The Court finds that *Jones*, its progeny, and the pre-*Clark* decisions cited in *Jones*, are inapposite. Plaintiff's request is not premature, and she therefore has standing to proceed. The Court will consider whether the statute of limitations should be tolled with respect to potential opt-in plaintiffs.").

Given that the parties here agree that deferral would not be inappropriate in this case, the court declines to consider the parties' equitable tolling arguments at this stage.

*4.*     *FLSA Notice*

Accordingly, the court grants Plaintiff's Motion for conditional notice, pursuant to Section 216(b) of the FLSA. Defendants raise no opposition to the content of the Proposed FLSA Consent to Join (Ex. 5 at PageID 5438), thus the court authorizes the proposed notice. The opt-in period shall be 60 days from the date the Notice is mailed. Defendants shall, within 14 days of the date of this Order, provide Plaintiff with a list of the full name and last known home address of each current and former employee fitting the class description, their last known telephone number and personal email address, dates of employment, and job title. If the parties are unable to reach an agreement, Plaintiff shall file a response to Defendants' Objections within 10 days of the date of this Order, and the court will resolve the conflict.

## IV. CONCLUSION

For the foregoing reasons, the court grants Plaintiff's Combined Motion for Certification (ECF No. 141). In doing so, the court hereby approves the giving of conditional notice to potential opt-in plaintiffs, pursuant to § 216(b) of the FLSA, in respect to Count One, and certifies a Rule 23 class action in regard to Counts Two, Three, Four, and Five. The court also grants the request to appoint Plaintiff Bradley Dietrich as class representative, and the law firm of Biller & Kimble, LLC as lead counsel for the putative class. Notice, as approved by the court, may now be given to the parties.

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

August 29, 2025